NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
**BASEIM GHAFOUR,**              :
                                 :   Civil Action No. 13-5695
           *Plaintiff,*          :
                                 :   OPINION
                                 :
v.                               :   January 8, 2015
                                 :
**CAROLYN W. COLVIN,**           :
**Acting Commissioner of Social Security,** :
                                 :
           *Defendant*.          :
_____   :

**ARLEO**, **UNITED STATES DISTRICT JUDGE**.

      Before this Court is Plaintiff Baseim Ghafour's request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). Plaintiff argues that the Commissioner's decision was not supported by substantial evidence. For the reasons set forth in this Opinion, the Court agrees that there was not substantial evidence to support the Commissioner's decision. Accordingly, the Commissioner's decision must be **REMANDED** for further consideration consistent with this opinion.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

### B. The Five-Step Disability Test

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work

experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. See Podedworny, 745 F.2d at 221-22.

## II. DISCUSSION

### A. Procedural History

This case arises out of Plaintiff's October 25, 2011, applications for disability insurance benefits and supplemental security income, which were denied both initially on December 2, 2011, and on reconsideration on February 24, 2012. (Tr. 86-92, 247-52, 262-67, 282-84). Plaintiff then sought review before an administrative law judge, and a hearing before the Honorable Richard L. De Steno (the "ALJ") occurred on October 9, 2012. (Tr. 292). Following the hearing, the ALJ issued a decision on November 27, 2012, in which he found that Plaintiff was not disabled because his medically determinable impairments were not severe. (See Tr. 19-26). Plaintiff then sought review before the Appeals Council, a request that was denied on July 26, 2013. (Tr. 5). Having

4

exhausted his administrative remedies, Plaintiff then timely filed the instant action on September 24, 2013. (Dkt. No. 1, Compl.).

### B. Factual Background

Plaintiff is a 48-year-old man who alleged in his application for Disability Benefits that became disabled on March 1, 2010. (Tr. 86). Plaintiff claims that he suffers from depression, the severity of which prevents him from performing his prior work as a plumber. (Tr. 109, 128). Plaintiff lives with his parents and states that he neither prepares meals for himself nor performs any house or yard work. (Tr. 127-29). In general, Plaintiff claims to have lost all interest in the daily activities of life: he goes outside only to attend doctor's appointments, he does not go shopping, he has no hobbies, and he does not socialize with others. (See Tr. 130-31). Instead, Plaintiff alleges that his days essentially consist of sitting in his room all day and staring at the walls with the television muted. (Tr. 306). He also claims that he cries every day, sometimes for hours. (Tr. 307). As a result of his condition, Plaintiff claims that he has no friends and has "alienated [himself] from [his] entire family." (Id.). Plaintiff further states that he suffers from auditory hallucinations and panic attacks and that his condition has caused a diminution in his ability to concentrate or remember things. (See Tr. 307-12). In order to treat his condition, Plaintiff has been prescribed Prozac for his depression and Klonopin and Xanax for his anxiety. (Tr. 149, 151).

Although it is not entirely clear, Plaintiff appears to have begun treatment for his anxiety and depression in or about March 2011. (See Tr. 302-03). Plaintiff alleges that he had suffered from these conditions for several years prior to seeking treatment, but finally sought treatment only at the insistence of his sister. (Tr. 301). In a May 17, 2011, follow-up consultation, Dr. Maritza De La Rosa observed Plaintiff to be alert, oriented, cooperative, although he also seemed to be

"very anxious and nervous." (Tr. 148). It was at this time that Plaintiff was prescribed 20 milligrams of Prozac and 0.5 milligrams of Klonopin per day. (Tr. 149). Then, in another follow-up consultation on November 3, 2011, Dr. Irina Zeliksen found that Plaintiff was "in no acute distress" and exhibited an "appropriate mood and affect." (Tr. 151).

On November 16, 2011, Plaintiff was evaluated by Paul F. Fulford, Ph.D., at the request of the New Jersey Division of Disability Services as part of the Disability Benefits application process. (Tr. 160). In that examination, Dr. Fulford found Plaintiff to be oriented, cooperative, and "oriented to time, place and person." (Tr. 161). Plaintiff also exhibited good hygiene and clear speech. (Id.). Dr. Fulford did find, however, that Plaintiff showed impaired concentration and poor short-term recall memory. (Id.). Dr. Fulford went on to note that Plaintiff's "[m]otivation and level of effort appeared adequate." (Tr. 162). Ultimately, Dr. Fulford diagnosed Plaintiff with dysthymic disorder and assigned Plaintiff a global assessment of functioning ("GAF") score of 65, indicating that Plaintiff suffered from some mild depressive symptoms, but could generally function fairly well.[1] (Id.).

Following Dr. Fulford's evaluation, Dr. Joan Trachtenberg provided her assessment as a non-examining medical consultant for the State on December 2, 2011. (Tr. 29-36). After reviewing Dr. Fulford's assessment, Dr. Trachtenberg concluded that although Plaintiff's condition was severe, he suffered only from mild to moderate limitations due to his condition.

---

[1] Dr. Fulford used the DSM-IV multiaxial scale for his diagnosis. Axis I deals with clinical disorders (such as dysthymic disorder); Axis II deals with personality disorders; Axis III deals with general medical conditions; Axis IV deals with psychosocial and environmental problems; and Axis V deals with the person's GAF. The Court notes that DSM-IV was supplanted by DSM-5 on May 18, 2013, and DSM-5 no longer uses the multiaxial system. At the time of Dr. Fulford's examination, however, the multiaxial diagnostic system was widely accepted as the best tool for assessment of mental disorders.

(See Tr. 32-35).[2]  As a result, Dr. Trachtenberg found that Plaintiff retained the residual functional capacity to perform a significant number of jobs in the national economy.  (See Tr. 33-36).  Also beginning in December 2011, Plaintiff began more intensive, albeit sporadic, psychiatric treatment with SERV Behavioral Health that continued into September 2012.  (See Tr. 164-246).  These later evaluations of Plaintiff's condition demonstrate a continuing, but fluctuating, depressive state and increases in Plaintiff's dosages for his medication.  (See id.).

### C. The ALJ's Decision

In his November 27, 2012, decision, the ALJ first noted that Plaintiff was not engaging in substantial gainful activity since the alleged onset date of March 1, 2010, and that Plaintiff suffered from the following medically determinable impairments: (1) a major depressive disorder; and (2) an anxiety disorder.  (Tr. 21).  Having made those determinations, the ALJ went on to find that Plaintiff's disability claim failed at step two of the sequential analysis—that is, the ALJ did not consider Plaintiff's anxiety and depression, either individually or in combination, to be severe.  (Tr. 21-26).

The ALJ's step two analysis began with a recitation of Plaintiff's testimony and continued with a lengthy discussion of the medical evidence.  (See Tr. 22-25).  Ultimately, the ALJ concluded that the "the medical evidence failed to establish that the claimant has had greater than slight or minimal functional limitations for a period of at least twelve consecutive months."  In support of that conclusion, the ALJ first pointed to the five-month gap between Plaintiff's follow-up visit with Dr. De La Rosa in May 2011 and his next visit with Dr. Zeliksen in November 2011.  (Tr. 25).  In addition, the ALJ relied upon the GAF score of 65 that Dr. Fulford assigned to Plaintiff.

---

[2] On reconsideration, Dr. Monica Lintott concurred with the findings of Dr. Trachtenberg in her February 6, 2012, report.  (See Tr. 42-47).

(Id.). Third, the ALJ noted that the post-December 2011 treatment records generally indicated improvement in Plaintiff's condition. (Id.). Finally, the ALJ rejected the non-examining medical consultants' opinion that Plaintiff's impairment was severe, finding that they relied too heavily upon Plaintiff's subjective complaints and failed to recognize that Plaintiff's impairment was not severe for an uninterrupted duration of twelve months. (Id.).

The ALJ completed his analysis with a discussion of the four functional areas set forth in section 12.00C of the Listing of Impairments found at 20 C.F.R., Part 404, Subpart P, Appendix 1 ("Appendix 1"): (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. (Tr. 25-26). In considering Plaintiff's limitations in each of these functional areas in light of the medical evidence in the record, the ALJ concluded that Plaintiff's "mental impairment causes no more than 'mild' limitation in any of the first three functional areas" and has not caused any episodes of decompensation. (Tr. 26). Therefore, the ALJ determined that Plaintiff did not suffer from a severe impairment or combination of impairments. (Id.).

**D. Analysis**

As the Court noted above, step two of the five-step sequential analysis requires the ALJ to determine whether the Plaintiff's claimed impairment or combination of impairments is severe. 20 C.F.R. § 404.1520(a)(4)(ii). Severity, in turn, has been defined in the negative—that is, severity is defined "in terms of what is 'not severe.'" Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The regulations thus warrant a finding of non-severity where an impairment or combination of impairments does not significantly limit the individual's ability to perform "basic work activities" such as "seeing, hearing, and speaking," and "understanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1520(c), 404.1521(b); SSR 85-28, 1985 WL

56856, at *3 (Jan. 1, 1985). In evaluating severity, the ALJ is to consider only the medical evidence "in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4.

While the burden of demonstrating severity rests with the claimant, that burden is minimal. Indeed, the Third Circuit has stated that the severity inquiry merely serves as "a *de minimis* screening device to dispose of groundless claims." Newell, 347 F.3d at 546. Therefore, where a claimant presents evidence demonstrating something more than a "slight abnormality," the claimant has satisfied the severity requirement. Id. As such, the Third Circuit has directed that "[r]easonable doubts on severity are to be resolved in favor of the claimant." Id. Given the limited gatekeeping function that the severity analysis is intended to serve, a denial of benefits on the ground of non-severity "should be reviewed with close scrutiny." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 359 (3d Cir. 2004).

Giving the ALJ's step-two denial in this case the close scrutiny that it must, and resolving all doubts in favor of Plaintiff, this Court finds that the ALJ's decision was not supported by substantial evidence. The record demonstrates that both of the non-examining physicians for the State assessed Plaintiff's mental impairment to be severe. (See Tr. 29-48). These physicians reached that conclusion after performing the evaluation technique set forth in the Commissioner's regulations. See 20 C.F.R. § 404.1520a. This technique required the physicians to evaluate four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. § 404.1520a(c)(3).[3]

---

[3] As to the first three areas, the claimant is given a rating of his or her degree of limitation based on a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). The fourth area uses a four-point scale, ranging from none to four or more. Id. Generally, if the claimant's degree of limitation is rated as "none" or "mild" in the first three areas and "none" in the fourth area, the claimant's impairment will be determined to be non-severe. Id. §

9

At the initial level of review, Dr. Trachtenberg reviewed Dr. Fulford's report and found Plaintiff's degree of limitation with respect to four functional areas to be mild, moderate, moderate, and none, respectively. (Tr. 32). On reconsideration, Dr. Lintott independently reviewed Dr. Fulford's report and reached the same conclusion as that reached by Dr. Trachtenberg with respect to the four functional areas. (Tr. 45). As noted above, however, the ALJ found that Plaintiff suffered from only mild limitations in the first three functional areas and had not experienced any decompensating episodes. (Tr. 25-26). These degrees of limitation accordingly allowed the ALJ to find that Plaintiff's impairment was not severe. (Tr. 26). The ALJ rejected the findings of Drs. Trachtenberg and Lintott simply because he concluded that they "clearly relied too heavily on the claimant's subjective complaints." (Tr. 25). The ALJ provides no explanation of the specific findings contained in either report that led him to that conclusion, and this Court can find no evidence of overreliance on Plaintiff's subjective complaints. On the contrary, both Dr. Trachtenberg and Dr. Lintott explicitly noted that they lent "great weight" to Dr. Fulford's report in making their findings, and not to any subjective complaints made by Plaintiff. (Tr. 33, 44). Moreover, both doctors affirmatively stated in their reports that Plaintiff's subjective complaints regarding his functional limitations were substantiated by the objective medical evidence alone. (See Tr. 33, 43). Therefore, the Court finds no support in the record for the ALJ's stated justification for rejecting the conclusions of the State's medical experts. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Because two doctors for the State both determined Plaintiff's mental impairment to be severe, the Court is satisfied that Plaintiff has met his minimal burden at step two of the sequential

---

404.1520a(d)(1). The last point on each of the scales, on the other hand, demonstrates a clear "[in]ability to do any gainful activity." Id. § 404.1520a(c)(4). In between these two extremes, it would appear that a "severe" finding at step two is generally appropriate.

analysis. While the Court recognizes that some of the medical evidence in the record could be interpreted to support the ALJ's finding of non-severity, the ALJ was required at step two to resolve all reasonable doubts in favor of Plaintiff. Newell, 347 F.3d at 546. Given that requirement, the ALJ should have determined Plaintiff's impairment to be severe. On remand, therefore, the Court directs the ALJ to perform step three of the sequential analysis and, if necessary, steps four and five.[4]

### III. CONCLUSION

Because the Court finds that the ALJ's decision is not supported by substantial evidence, the Commissioner's disability determination is **REMANDED**. An appropriate order will follow.

s/ *Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court also notes that it was inappropriate for the ALJ to consider Plaintiff's sporadic medical treatment for his mental condition as evidence of non-severity (see Tr. 25), since the failure to seek treatment can often be a result of the mental condition itself. See, e.g., Pate-Fires v. Astrue, 564 F.3d 935, 945-46 (8th Cir. 2009). In his renewed analysis, the ALJ is directed to disregard Plaintiff's apparent gaps in treatment.